# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-mj-8591-RMM

UNITED STATES OF AMERICA

v.

JEFFREY EVERETT BRASWELL JR.

       Defendant.

_____/

**FILED BY___SP___D.C.**

**Oct 17, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:   *Suzanne Huyler*
     Suzanne Huyler
     Assistant United States Attorney
     District Court No. A5503350
     500 South Australian Avenue, Suite 400
     West Palm Beach, Florida 33401
     Tel: (561) 209-1013

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  25-mj-8591-RMM |
| Jeffrey Everett Braswell Jr. | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED BY _____ SP _____ D.C.

**Oct 17, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. – West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____October 16, 2025____ in the county of ____Palm Beach____ in the ____Southern____ District of ____Florida____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & (b)(1)(C) | Knowingly and Intentionally Possess with Intent to Distribute a Controlled Substance involving a detectable amount of fentanyl |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Crystal J. Connors, DEA SA
*Printed name and title*

Sworn to and attested to me by applicant by telephone (Facetime) per the requirements of Fed. R. Crim. P.4 (d) and 4.1.

Date: ____10/17/2025____

_____
*Judge's signature*

City and state: ____West Palm Beach, FL____

Ryon M. McCabe
*Printed name and title*

## AFFIDAVIT

I, Crystal Connors, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been assigned to the DEA Miami Field Division since November 2012.  As a Special Agent, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).  Prior to my assignment to the Miami Field Division, I received comprehensive training at DEA's training facility in Quantico, Virginia. As a result of this training and after conducting multiple narcotic-related investigations, I am knowledgeable in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as the means and methods in which offenders can use residences to facilitate their narcotics trafficking operation. As a DEA Special Agent, I have received training in the investigation of violations of the Controlled Substances Act and my duties include the investigation of the distribution of illicit drugs to include violations of Title 21 United States Code Section 841(a) (possession with the intent to distribute a controlled substance) and Title 21 United States Code Section 846 (Conspiracy to possess with intent to distribute).

2. This affidavit is made in support of a criminal complaint charging Jeffrey Braswell (hereinafter "BRASWELL") with possession with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). The information contained in this affidavit is based in part on information developed by DEA Special Agents, Task Force Officers and information obtained from other law enforcement personnel. Because this affidavit is being submitted for the

limited purpose of establishing probable cause in support of the criminal complaint, it does not include all facts known to me or to other law enforcement officers regarding this investigation.

## PROBABLE CAUSE

3. On October 4, 2025, at 1554 hours Palm Beach County Sheriff's Office (PBSO) dispatch received a call from Margaret CICCONE stating that she had found her son, Charles CICCONE (hereinafter "DECEDENT"), deceased in the bathtub.

4. At 1717 hours, PBSO homicide detectives arrived and observed a white powdery substance in a clear plastic baggie, clear open capsules, and an empty pill bottle with the label removed on the kitchen countertop. Detectives observed the DECEDENT and did not find any obvious injuries on his body.

5. Margaret CICCONE completed a sworn and recorded interview with homicide detectives, during that interview she stated that the DECEDENT was known to take narcotics and had an extensive history of drug abuse to include prescribed and illegal narcotics. She reported that the last time that she saw the DECEDENT alive was on October 3, 2025, at approximately 1900 hours.

6. Margaret CICCONE provided homicide detectives with the passcode to the DECEDENT'S phone. Inside of the phone, detectives located a conversation between the DECEDENT, and a number saved as "J 200 B 400 Gas Card" (561) 654-0795 (hereinafter TARGET CELLULAR DEVICE/BRASWELL), whom they suspected to be a drug dealer. PBSO Narcotics Unit was then called to the scene.

7. At 1930 hours, Agent Daniel Ramos arrived on scene and took possession of the DECEDENT'S telephone. Agent Ramos began reviewing the text messages, call log, and money transfer applications.

2

8. The following is a verbatim conversation between the DECEDENT and the TARGET CELLULAR DEVICE which occurred on Friday October 3rd, 2025, the last date he was seen alive:

DECEDENT (09:17PM): Outgoing call, 1 Min

DECEDENT (09:20PM): SMS text "Done thx"

TARGET CELLULAR DEVICE (10:49PM): SMS text "on my way"

TARGET CELLULAR DEVICE (10:51PM): SMS text "Call"

DECEDENT (10:53PM): Outgoing call, 10 Seconds

TARGET CELLULAR DEVICE (11:03PM): SMS text "here"

TARGET CELLULAR DEVICE (11:05PM): "It's by that same pole in a pill bottle"

DECEDENT (11:16PM): SMS text "K Thx".

9. Agent Ramos then located a payment to "Mr Geestacka" for $181.50 at (9:20PM) on October 3, 2025, which coincides with the DECEDENT'S text stating "done, thx" after his one-minute phone call with the TARGET CELLULAR DEVICE.

10. The pill bottle referenced above is suspected to be the same pill bottle located next to the narcotics and paraphernalia on the DECEDENT'S countertop.

11. Analysis of the DECEDENT'S cellular phone indicated previous narcotics transactions between the DECEDENT and the user of TARGET CELLULAR DEVICE dating back to August 2025. In a text message chain from October 1, 2025, TARGET CELLULAR DEVICE provided the DECEDENT a secondary phone number to utilize for a "Zelle" payment (561) 410 4355. With this phone number, agents were able to identify "J 200 B 400 Gas Card" as Jeffery Everett BRASWELL Jr. It should be noted that this phone number is no longer in service, and he is now

using the TARGET CELLULAR DEVICE. Via a law enforcement database, Agent Ramos learned that BRASWELL had received a recent citation while driving a vehicle bearing Florida tag BR13ET. Florida tag BR13ET is registered to Alexis Dominque Peterson of 505 Spencer Drive, Apt 405, West Palm Beach, Florida.

12.  On October 4, 2025, law enforcement utilized the DECEDENT'S phone to contact BRASWELL via text message. The following is the verbatim text conversation:

> AGENT RAMOS (08:39PM): U around
>
> BRASWELL (08:41PM): yea
>
> AGENT RAMOS (08:46PM): U good round 11 I'm wit mom rn (right now)
>
> BRASWELL (08:46PM): okay
>
> BRASWELL (08:46PM): u gone need
>
> AGENT RAMOS (08:47PM): Ya
>
> BRASWELL (08:47PM): okay

13.  Based on the above, an operational briefing was held at an undisclosed location within Palm Beach County. Agents were advised that Agent Ramos would be utilizing the DECEDENT'S phone to contact BRASWELL in attempt to purchase $200.00 of fentanyl.

14. Following the briefing, Agent Ramos had the following verbatim conversation with the BRASWELL.

> AGENT RAMOS (10:52PM): In hospital with mom, can't talk still need I'm gonna have this chick send
>
> AGENT RAMOS (10:52PM): Only Zelle
>
> BRASWELL (10:53PM): okay
>
> BRASWELL (10:54PM): 5614104355

15. At this time, TFO Holst sent $200 of PBSO Investigative Funds via Zelle to 5614104355 which was enrolled as Jeffrey BRASWELL.

> BRASWELL (11:00PM): let me know when u do it
>
> AGENT RAMOS (11:01PM): *send screenshot of Zelle Payment
>
> AGENT RAMOS (11:01PM): Sent
>
> AGENT RAMOS (11:01PM): Just throw it in place door shud be unlocked
>
> AGENT RAMOS (11:02PM): thx

16. After a lapse in time, Agent Ramos received an SMS text message from "BRASWELL." The following is verbatim;

> BRASWELL (11:57PM) it's at the same pole
>
> AGENT RAMOS (12:00AM): Still at hospital can u throw it in my house plz
>
> BRASWELL (12:06AM): i sent my boy he already gone

17. After searching the general area near the DECEDENT's apartment, agents were unable to locate any contraband. Agent Ramos again made telephonic contact with BRASWELL. The following is verbatim:

> AGENT RAMOS (12:10AM): This chick callin can u tell can u tell her where the pole is

18. At 1213 hours, TFO Stephanie Holst, acting in an undercover capacity and hereinafter referred to as UC, placed a recorded outgoing call to BRASWELL. During this call, BRASWELL gave detailed directions to the UC on where she could find the narcotics.

19. At 1222 am, the UC again called BRASWELL. During this recorded call, BRASWELL confirmed that his name is "Jeff", and that the contraband was located in the same spot as the last three transactions with the DECEDENT. The UC advised BRASWELL that she still could not

locate the contraband. The UC asked BRASWELL to draw the pole on a map. BRASWELL responded that he cannot do this because the phone he is using is a flip phone. It should be noted that the narcotics were never located on this date.

20.  In the days following, BRASWELL continued to contact the DECEDENT phone via text requesting a phone call.

21. On October 9, 2025, agents were granted a federal GPS location order on BRASWELL's cellular device. On October 10, 2025, agents began receiving GPS location pings on BRASWELL's cellular device.

22. On October 14, 2025, at 1206 hours Agent Ramos contacted the BRASWELL utilizing the DECEDENT phone, the following is a verbatim text message exchange:

> AGENT RAMOS: Hey I'm gonna need still at hospital its really not look good good here today
>
> AGENT RAMOS: Chick gonna send u money and get for me
>
> BRASWELL: okay
>
> AGENT RAMOS: ok.

23. The UC then contacted BRASWELL and spoke about sending him $200, he stated that he would have to "grab the shit" and as soon as the UC sent the payment he would "get in motion." The subject further explained that he would meet with the UC in person so that "the shit didn't happen again" (referencing October 4, 2025, when agents could not locate the drugs).

24. BRASWELL provided the UC with the number 5614104355 to send the funds. TFO Holst sent $200 of PBSO Investigative Funds via Zelle to 5614104355 which was enrolled as Jeffrey BRASWELL.

25. At 1326 hours, the UC received a text from BRASWELL that the funds were received via Zelle. BRASWELL advise that he would make the delivery later that afternoon.

26. On October 14, 2025, surveillance was conducted on BRASWELL. GPS location pings placed TARGET CELLULAR DEVICE to an apartment complex located at 505 Spencer Drive, West Palm Beach, Florida. On this date, agents observed BRASWELL exit 505 Spencer Drive and enter a beige Buick sedan bearing Florida tag BR13ET.

27. On October 14, 2025, and October 15, 2025, agents awaited a delivery of fentanyl from BRASWELL, which did not occur.

28. On October 16, 2025 at 1012 hours BRASWELL contacted the UC via text message.

BRASWELL: I got that if you're around.

UC: I'm at work give me a minute

UC: Super busy

29. On this date, agents arranged an operation in which BRASWELL would deliver the owed fentanyl to the UC at the Tanger Outlets located at 1751 Palm Beach Lake Blvd, West Palm Beach, Florida. Via text message, BRASWELL instructed the UC to meet him in the Walgreens parking lot located at the corner of Spencer Driver and Palm Beach Lakes Boulevard instead. A short time later, surveillance units observed BRASWELL exit his residence and walk towards the aforementioned Walgreens. BRASWELL was then taken into custody by members of West Palm Beach Police Department. During his arrest, officers observed BRASWELL remove something from his front pocket and swallow it; this was captured on the officer's body camera footage. BRASWELL was then transported to St. Mary's Medical Center in West Palm Beach for treatment.

30. On the evening of October 16, 2025, at approximately 2000 hours, agents and officers knocked on 505 Spencer Drive, Apt 405, West Palm Beach, Florida. Asa Weston answered the door and advised that she lived at the residence but wanted to call her mother, Alexis Peterson. A short time later, Ms. Peterson arrived at the residence. Ms. Peterson advised that she leased the apartment and lived there with her daughter and her sister. Ms. Peterson stated that Jeffery Brasswell would occasionally stay at the apartment as well. Peterson granted law enforcement access to the residence and consented to them searching. Peterson explained that the south bedroom of the house is hers, but when BRASWELL stays she allows him to sleep there. Peterson then pointed out the dresser area of the south bedroom and advised that the items on the dresser belonged to BRASWELL. Located on the dresser, agents observed a grey men's crossbody bag. Inside of the crossbody bag, the following items were located: correspondence to Jeffery BRASWELL, men's jewelry, men's grooming products, a traffic citation issued to Jeffery BRASWELL and one baggie containing seven (7) capsules of brown powder that field tested positive for fentanyl. Also on the dresser, a wallet was recovered containing multiple bank cards issued to Jeffery BRASWELL. Behind the dresser on the windowsill, a baggie containing approximately 7 grams of unknown white powder, a measuring cup and spoon, empty baggies, and empty capsules and multiple flip phones were recovered. Peterson stated that these items were not hers and that she did not want them in her house any longer.

31. Based on the facts set forth in this affidavit, there is probable cause to believe that Jeffery Everett BRASWELL Jr has violated Title 21, United States Code, Sections 841(a)(1). This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§2711 and 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the

Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. §2711(3)(A)(i).

## **CONCLUSION**

Based on the foregoing, I submit that there is probable cause to believe that BRASWELL committed the criminal offense of possession with intent to distribute a controlled substance, that is, a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21 United States Code Section 841(a)(1) and (b)(1)(C).

FURTHER YOUR AFFIANT SAYETH NAUGHT

Crystal Connors
Special Agent
U.S. Drug Enforcement Administration

Sworn to and attested by Telephone-Facetime
per Fed. R. Crim. P. 4(d) and 4.1 on 17 day of October, 2025

HONORABLE RYON M. MCCABE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**:  <u>  Jeffrey Everett Braswell Jr.                                  </u>

**Case No**:  <u>  25-mj-8591-RMM                                                          </u>

<u>Possession with Intent to Distribute a Controlled Substance                      </u>

<u>Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C)                  </u>
**\* Max. Term of Imprisonment:** 20 years
**\* Mandatory Min. Term of Imprisonment (if applicable):** N/A
**\* Max. Supervised Release:** 3 years to Life
**\* Max. Fine:**  $1,000,000

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**